SOUTHPORT *vs.* OGDEN.

A by-law of a borough, prohibiting the taking of oysters from the waters within said borough, during a certain period of the year, under a penalty therein prescribed, which the borough is authorized to make by its charter, is abrogated by a general law of the state, passed subsequent to the granting of the charter, prohibiting the doing of the same acts, under a penalty, prescribed in the latter act, so far as such by-law prohibits such acts, whether such by-law was made before, or after the passing of the general law ; therefore no action for the doing of said acts, after the passing of such general law, can be maintained on such by-law.

THIS action was originally brought by the borough of Southport, an incorporated borough, in the town of Fairfield, against Horace Ogden, before a justice of the peace, and thence, by appeal, came before the county court.

The declaration alleged, that said borough was chartered by act of the general assembly of this state, at its May session, 1831, with the power of suing and being sued by its corporate name, and, with the further power of making by-laws within the limits of said borough, and of inflicting penalties for the breach of the same : and, among other things, by section 11th of said act of incorporation, with the power of making by-laws as aforesaid, relative to the improvement and preservation of the shell and scale fisheries within the limits of said borough, as more fully appeared by reference to said act of incorporation : that, between the first day of May and the first day of October, 1850, that is to say, on or about the 4th day of September, 1850, at said Fairfield, the defendant entered in and upon the river known as Mill river, the same being a river where the tide ebbs and flows, and upon that portion of the same which belongs to the waters within the limits of said borough, and which constitutes a portion of said borough, and willfully and unlawfully took therefrom, or caused to be taken, a certain quantity of oysters ; *viz.*, about two bushels at one tide on said day, and by

means of a boat or basket, carried them away, contrary to the first section of a certain by-law of the said borough, entitled " a by-law for regulating the shell-fishery within the limits of the borough of Southport," to wit, " Be it ordained by the warden, burgesses and freemen of the borough of Southport, that if any person shall take, or cause to be taken, any oysters from the waters or harbor within the limits of said borough, from the first day of May to the first day of October in each year, he shall forfeit and pay to the treasury, for the use of said borough, the sum of two dollars for any one tide;" and which said by-law was duly and legally passed in court of burgesses, April 26th, 1848, and approved, at a legal meeting of said borough, warned and held for that purpose, April 28th, 1848, and thereafter published in the Standard, a newspaper published in Bridgeport, in said county, as by said act of incorporation provided, and said by-law has never been repealed, altered or set aside; whereby and by force of said by-law, &c.

The defendant having filed a demurrer, the court found the plaintiffs' declaration insufficient, and that the defendant was entitled to recover his costs.

The plaintiffs, thereupon, by motion in error, brought the record before the superior court for revision, and the questions thereon arising, were, by said superior court, reserved for the advice of this court.

*Butler* and *Beardslee*, for the plaintiffs, contended,

1. That the by-law was not void because there was general legislation on the same subject. There are many such instances of concurrent power, inuring to those who first act. For example, the power of boroughs and cities over highways, and other subjects, given to the control of towns. 1 Wend., 237.

2. That the statute recognizes the rights of the borough, as still existing, and does not anywhere repeal them. See stat. title Fisheries, 1849.

*Hawley*, for the defendant, claimed,

1. That the by-law was void, because it legislates on subjects already passed on by the legislature. The statute, passed in 1848, and still in force, imposes a fine for the same acts as are prohibited by the by-law in question. One penalty cannot be recovered under the general law, and another under the borough law, for the same act. While the general law punishes by a fine for an act done between March and November, the borough may inflict an additional penalty for the same act.

2. When the plaintiffs' charter was granted, there was no general law on the subject, and, therefore, the borough was authorized to legislate upon it. Afterward, and long before the by-law was passed, the general law was enacted, covering the whole ground, and thenceforth the borough had no right to act, except in reference to such fisheries as the legislature had not provided for.

STORRS, J. One of the questions, and the most important, presented in this case, is, as to the validity of the by-law on which this action was brought.

The plaintiffs were incorporated as a borough, in 1831, with the power, among others, of making by-laws, and enforcing them by penalties, relative to the improvement and preservation of the shell and scale fisheries within the limits of the borough. In 1842, and previous to the making of any by-law on this subject, the present general statute was enacted, by which it was provided, (with certain qualifications not applicable to the case before us,) that every person, who should, from the first day of March until the first day of November, in each year, take, gather, or collect, any oysters, or oyster-shells, in or upon any of the flats, creeks, banks, rivers, harbors, or waters of this state, should be punished by fine or imprisonment, or both, as therein prescribed. In 1848, the by-law, on which the present action was brought, was passed, by which it was ordained, that if any person

Southport *v.* Ogden.

should take, or cause to be taken, any oysters from the waters or harbor within the limits of said borough, from the first day of May to the first day of October, in each year, he should forfeit and pay to the treasurer, for the use of said borough, the sum of two dollars for any one tide. Hence, it appears that the act, for the commission of which this action is brought, under the by-law, is one, which is prohibited also by the said general law, and that the by-law prohibits it between the first day of May and the first day of October, which is a portion of the time while such act is prohibited by the general law.

We attach no importance to the circumstance, that the by-law was made after the passing of the general law, but, on the question of its present validity, consider it as standing on the same ground as if it was passed before the latter. If the effect of such general law would have been to suspend or abrogate, to any extent, the by-law, if it had been previously passed, its effect would plainly be to render it, if subsequently passed, nugatory to the same extent.

Conceding, (what indeed we see no reason to question,) that this by-law was one which, under the charter of the plaintiffs, it was competent for them to make, previous to the passing of the general law, we have no doubt of the power of the legislature to pass such general law, notwithstanding the power previously given to the borough to pass said by-law; and we are also of opinion that when such general law was enacted, it superseded the power which had been so given to the borough, and suspended or abrogated it, so far as the general law prohibited and punished the same act, which was prohibited and punished by such by-law. It has not been, and could not with any plausibility be, claimed that the legislature, by giving to the borough power to make this by-law, precluded itself from enacting any general law on the same subject. There was clearly nothing in the grant of that power to the borough which was in its nature irrevocable, so that the legislature could not afterward limit or

revoke it at its pleasure. And the enactment, by the legislature, of this general law, affecting all the people of the state, and including, of course, those being within the limits of this borough, was a resumption by the legislature, of the power of regulating the shell and scale-fisheries which they had before given to the plaintiffs, so far as such general law provided for their regulation; and therefore, to that extent, had the effect of limiting or abrogating the power of the plaintiffs over that subject. We have no doubt that such was the design of the legislature, and that, in passing the general law, they intended to assume, exclusively, the regulation of the oyster fishery in this borough, in the respects in which it is affected by the provisions of this by-law. Unless we give to the general statute, the effect of thus limiting the power granted to the plaintiffs on this subject, we must tolerate qualities in the by-law in question, which have always been held to be fatal to the validity of regulations of this description. It is well settled that, in order to be valid, they must not be unreasonable, oppressive, or in conflict with the general law of the state. If this by-law is sustained, it will clearly be liable to some of these objections. If the prosecution of a person, for a violation of the general law, would not be a bar to a subsequent prosecution for the same act under this by-law, the consequence would be, that he might be tried and punished twice for the same offence. This would be so palpably unreasonable and oppressive, that, if it were competent for the legislature to enact or sanction a law, by which a person might be tried or punished more than once for the same offence, (a point which it is unnecessary here to consider,) a by-law of a corporation clearly ought not to be upheld, which might produce that effect, unless such was most clearly the intention of the legislature. The presumption would be most strongly against such an intention; and the mere fact, that the corporation had been empowered to make a by-law in regard to the subject, would furnish no evidence of such an intention. But

the enactment of a general law by the legislature, after having conferred such power on the corporation, regulating the same matter which had been before permitted to be regulated by such by-law, would, in the absence of the clearest evidence to the contrary, shew most satisfactorily, that the legislature intended to take the regulation of the matter out of the hands of the corporation, to the extent to which such general law regulated it. Applying these principles to this case, there is not only nothing to shew that it was the design of the legislature, that the power to make the by-law in question should continue after the enactment of the general law on the same subject, but the strongest evidence to the contrary. If, on the other hand, the prosecution of a person for a violation of this by-law, would be a bar to a subsequent prosecution for the same offence under the general law, the consequence would be, that the latter would be abrogated and rendered nugatory in that case; and thus the by-law would conflict with the general law, by limiting its effect to particular cases only, and thus destroying the universality of its operation. That it was the intention of the legislature, that a power given by them, to one of our municipal corporations, to make by-laws in regard to their local or internal concerns, should thus interfere with the operation or validity of our general statutes, we cannot believe. For these reasons, we are of opinion, that the by-law in question is invalid, and that the declaration in this case is therefore insufficient.

The result to which we have come, on this point, renders it unnecessary to examine the other objections which have been made to the declaration; and the superior court is advised, that there is no error in the judgment complained of.

In this opinion the other judges concurred.

Judgment affirmed.