ANTHONY G. LAURICELLA ET AL. *v.* PLANNING AND ZONING BOARD OF APPEALS OF THE TOWN OF GREENWICH

COURT OF COMMON PLEAS    FAIRFIELD COUNTY    FILE NO. 100768
AT BRIDGEPORT

Memorandum filed December 30, 1974

*Rader & Rader,* for the plaintiffs.

*James W. Macauley,* for the defendant.

BIELUCH, J. The plaintiffs are the seven heirs of the late Anthony T. Lauricella, who have inherited

in equal shares four adjoining lots bordering on the easterly shore of Cos Cob Harbor in the town of Greenwich, and their purchaser of that land under contract for the erection thereon of two single-family dwellings permitted by the applicable zoning classification. The building inspector refused to grant the necessary building permits on the ground that since the premises are located in the wetlands area, a special exception for the construction must be obtained from the defendant. On October 29, 1973, the plaintiffs appealed to the defendant from that decision of the building inspector and also requested a special exception to allow the erection of the proposed buildings, that request for a special exception being expressly made without prejudice and with reservation of all rights of the plaintiffs. After a public hearing, the defendant on December 3, 1973, denied the plaintiffs' appeal on the following grounds: "The proof submitted did not meet the special exception standards. Based on the evidence submitted, a substantial amount of fill would adversely affect the 'Wetlands' area. The property and the proposed floor level of the houses are below the elevation required in a 'Wetlands' area."

The plaintiffs have appealed from that action, claiming that the defendant acted illegally, arbitrarily and in abuse of the discretion vested in it, in that (1) the classification of their land as wetland is unreasonable and arbitrary; (2) the regulation of tidal wetlands has been preempted by the state; (3) the town's wetland regulations are not authorized by the zoning enabling act; and (4) the defendant's denial of the plaintiffs' use of their land constituted a confiscation for public use without compensation in violation of the federal and state constitutions. The defendant denies those claims and alleges further, by way of special defense, that "if said claims have any merit said claims were

waived by the plaintiffs in seeking advantage and or relief under the statutes, regulations and ordinances challenged."

The special defense of the defendant is summarily overruled. The action of the building inspector in denying the plaintiffs' applications for the two building permits precipitated their appeal from his action. In combining that appeal with an application for the special exception deemed necessary by the inspector, the plaintiffs conformed to the recognized practice of consolidating their claims and thereby avoiding multiplicity of actions, but, consistent with their position, they judiciously expressly provided in their request for a special exception that they were taking such "proceedings without prejudice and with reservation of all rights." The defendant seeks to apply the established rule that, having sought to avail themselves of the zoning regulations by making application thereunder, the plaintiffs are precluded in the same proceeding from raising the question of their constitutionality or legality. *J & M Realty Co.* v. *Norwalk,* 156 Conn. 185, 191. The plaintiffs have successfully avoided that limitation on their claims by the clear reservation of all rights, which had as its purpose the express denial of any such waiver as is now claimed by the defendant. The plaintiffs claimed a right to the building permits when they first made application to the building inspector. That is the right that they reserved to assert before the defendant, and, on appeal, to this court. They have not waived their right to attack the defendant's wetland regulations.

The defendant's wetland regulations were copied from state legislation. This court must, therefore, look to that source for their legality and operative force. The present tidal wetland laws, General

Statutes §§ 22a-28 to 22a-35, had their origin in Public Acts 1969, No. 695, the tidal wetlands law, effective October 1, 1969. Section 1 (2) of Public Act 695 defined "wetland" to mean "those areas which border on or lie beneath tidal waters, such as, but not limited to banks, bogs, salt marsh, swamps, meadows, flats, or other low lands subject to tidal action, including those areas now or formerly connected to tidal waters, and whose surface is at or below an elevation of one foot above local extreme high water; and upon which may grow or be capable of growing some, but not necessarily all, of the following: . . . [listing sixteen different types of plant life or growth]." Subsection (3) defined "regulated activity" to mean "any of the following: Draining, dredging, excavation, or removal of soil, mud, sand, gravel, aggregate of any kind or rubbish from any wetland or the dumping, filling, or depositing thereon of any soil, stones, sand, gravel, mud, aggregate of any kind, rubbish or similar material, either directly or otherwise, and the erection of structures, driving of pilings, or placing of obstructions, whether or not changing the tidal ebb and flow." Section 2 recited the adverse effects of the loss of the wetlands and stated that "[t]herefore, it is declared to be the public policy of this state to preserve the wetlands and to prevent the despoliation and destruction thereof."

Section 3 of Public Act 695 directed that the commissioner of agriculture and natural resources "shall promptly make an inventory of all tidal wetlands within the state." The boundaries were to be shown on suitable reproductions or aerial photographs, and "[s]uch lines shall generally define the areas that are at or below an elevation of one foot above local extreme high water." Public hearings, with notice, were to follow. "After considering the testimony given at such hearing and any other facts

which may be deemed pertinent and after considering the rights of affected property owners and the purposes of this act, the commissioner shall establish by order the bounds of each of such wetlands. A copy of the order, together with a copy of the map depicting such boundary lines, shall be filed in the town clerk's office of all towns affected. The commissioner shall give notice of such order to each owner of record of all lands designated as such wetlands by mailing a copy of such order to such owner by registered mail. The commissioner shall also cause a copy of such order to be published in a newspaper or newspapers having a general circulation in the town or towns where such wetlands are located."

Section 5 provided that "[n]o regulated activity shall be conducted upon any wetland without a permit." Section 6 described the manner of applying to the commissioner for a permit to conduct a regulated activity upon any wetland. A public hearing, with notice as directed, was prescribed. Under § 7 the commissioner was to consider the effect of the proposed work with reference to the purpose and public policy of the act. He was also required to record his findings and reasons for all action taken on permit applications.

The right of appeal was granted by § 8. It is of significance that because of the direct relationship of appeal proceedings to the value of wetland property, the authority of the court varied from that in the usual administrative appeal of affirming, reversing or modifying the decision of the agency. See General Statutes § 4-183 (g) (Uniform Administrative Procedure Act); § 8-8 (Zoning). The power of the court on appeal was cast in the mold of the uniqueness of the situation in these terms: "If the court finds that the action appealed from is an

unreasonable exercise of the police power, it may set aside the order. If the court so finds that the action appealed from constitutes the equivalent of a taking without compensation, and the land so regulated otherwise meets the interests and objectives of this act, it may at the election of the commissioner (1) set aside the order or (2) proceed under the provisions of . . . [condemnation statutes] to award damages." Section 9 provided further that the court shall "examine the question of the legality of the action of the commissioner and the propriety of said action." If it appears to the court that any testimony has been improperly excluded or that the facts are insufficient for the equitable disposition of the appeal, "it shall refer the case back to the commissioner to take such evidence as it may direct and report the same to the court, with the commissioner's findings of fact and conclusions of law." In conclusion, § 10 provided for civil penalties, enforced by the attorney general, for violations of the act.

Public Acts 1971, No. 872, created the department of environmental protection and, by § 400 of that act, transferred the duties and responsibilities under the tidal wetland laws to the commissioner of environmental protection. Section 1 of Public Acts 1972, No. 132, added to the list of growth which may grow or be capable of growing on tidal wetland the forty-seven additional plant types specified in the present definition of tidal wetland in General Statutes § 22a-29 (2). That amendment was effective from passage on April 28, 1972.

In the same session, the legislature passed The Inland Wetlands and Water Courses Act, Public Acts 1972, No. 155, now General Statutes §§ 22a-36 to 22a-45, effective on May 19, 1972. Section 4 (15) of Public Act 155, in defining inland wetlands, spe-

cifically excluded land regulated pursuant to General Statutes §§ 22a-28 to 22a-35, the tidal wetland laws. The same exception was made in the definition of water courses in § 4 (16). In § 7 (a), "it is hereby declared to be the public policy of the state to encourage municipal participation by means of acquisition of wetlands and water courses and regulation respecting regulated activities affecting the wetlands and water courses within the territorial limits of the various municipalities." The municipal agency authorized by a municipality's legislative body must, under § 7 (c), promulgate necessary regulations conforming to the commissioner's regulations under § 5.

The remaining provisions of Public Act 155 further detail the legislative program for municipal or local control of regulated activities affecting inland wetlands and water courses. In the event that a municipality did not exercise its regulatory authority by January 1, 1974, the commissioner of environmental protection was obligated to assume such control within the territorial limits of such municipality. Of interest is § 8 (a) providing for appeals under the Uniform Administrative Procedure Act. General Statutes §§ 4-166 to 4-184. Section 8 (b) allows the court to assess damages under condemnation statutes if "the court determines that the action appealed from is a taking," with payment of court costs and reasonable attorneys' fees.

The intent of the legislature in the enactment of the respective tidal wetlands and inland wetlands laws is clearly manifest. It was expressed in each act, § 2 of Public Acts 1969, No. 695, and § 7 (a) of Public Acts 1972, No. 155. Further, it was evident in the aforesaid definitions of tidal wetlands and inland wetlands, as well as in the statutory provisions for state and local control of regulated activi-

ties thereon, respectively. The legislature's mandate was that tidal wetlands were to be regulated exclusively by the state, through its commissioner of environmental protection, while the inland wetlands were to be controlled exclusively by the municipalities, with the advice, assistance and cooperation of the state commissioner, except on default.

The plaintiffs' property has been inventoried by the commissioner of environmental protection under General Statutes § 22a-30. The boundary of the tidal wetland thereon has been shown on an aerial photograph filed in the town clerk's office on October 2, 1972, a copy of which was given in evidence by the plaintiffs at the public hearing in support of their testimony and the allegation in their appeal to the defendant that "the subject property is not within the bounds of the state tidal wetland map." Section 22a-30 requires that the commissioner shall establish by order the bounds of each of such wetlands and file a copy of the order with the town clerk together with a copy of the map depicting the boundary lines. In addition, a copy of the order must be given to the owners by registered mail. The copy of the aerial photograph showing the tidal wetland boundary line on the plaintiffs' property, submitted in evidence for the consideration of the defendant, contains the following legend over the signature of Dan W. Lufkin, commissioner: "WETLAND BOUNDS ESTABLISHED BY ORDER DATED 9-26-72."

It may be presumed that Commissioner Lufkin has done his duty under the aforementioned law and filed a copy of that order with the boundary map in the Greenwich town clerk's office and gave a copy to the plaintiff owners by registered mail. *Aczas* v. *Stuart Heights, Inc.*, 154 Conn. 54, 58. That order was not introduced in evidence or con-

sidered by the defendant. The plaintiffs' testimony on the tidal wetland boundary line, supported by the aerial map, was, however, not contradicted at the public hearing. The defendant, according to the record, did not make a finding with respect to the tidal wetland boundary line as established by the commissioner of environmental protection. Although the defendant had access to the descriptive order of that boundary line in the town clerk's office, the record does not show that the defendant referred to it in its consideration of the matter.

The defendant's denial of the plaintiffs' appeal and alternative request for a special exception was predicated upon the town building zone regulations. Section 5.2c provides as follows: "A regulated activity in a wetland area shall be permitted only as a special exception use when authorized by the Zoning Board of Appeals, which shall make a specific finding, in addition to findings and conditions under Section 28 of the regulations, that the proposed use and related regulated activities will not materially adversely affect any wetlands in the Town of Greenwich and will generally conform with the declaration of policy set forth in Section 5.2a. Section 5.2 shall not apply to any regulated activity permitted by the Commissioner of Agriculture and Natural Resources pursuant to Public Act 695."

Definitions are found in § 4. Wetland, as there defined, was copied verbatim from § 1 of Public Acts 1969, No. 695. The same is true of the definition of regulated activity. The declaration and statement of purpose found in § 2 of Public Act 695 were adapted in paraphrased form to apply to the town of Greenwich by §§ 5.2a and 5.2b of the zoning regulations. The amendments to the state tidal wetlands law by § 400 of Public Acts 1971, No. 872, transferring enforcement to the commissioner of

environmental protection, and by § 1 of Public Acts 1972, No. 132, adding forty-seven additional plant types to the definition of wetland, have not been adopted by amendment to the aforesaid zoning regulations. The record does not disclose whether The Inland Wetlands and Water Courses Act has been adopted by the town of Greenwich.

The circumstances of the adoption by the town of Greenwich of portions of the original wetlands act for its own regulation through the town planning and zoning board of appeals are not evident. The state statutes provide for the complete identification, inventory and regulation of tidal wetlands in the state with adequate and proper notice to all necessary parties. Legal provision has been made for the consideration and protection of all possible interests. The state has assumed the responsibility for the policing of regulated activities through the commissioner of environmental protection and the enforcement of the law by the attorney general. The legislation is complete in all respects. No further purpose could be served by local assumption of authority. Even if the entire act with all of its protective provisions had been adopted locally, which is not the situation here, would any reason exist for duplication of the law? Only conflict and confusion of rights, such as now appear in the record before the court, could result. See *Connecticut Co.* v. *New Haven,* 103 Conn. 197, 211.

The interrelation between state and local law on the same subject matter is best expressed in the leading case of *Shelton* v. *Shelton,* 111 Conn. 433. Unless there has been an express grant of power to the town of Greenwich or the matter is one of purely local and municipal concern which the state constitution has committed to it, neither of which exceptions applies in the case now before the

court, the power of the town to enact the zoning regulations pertaining to tidal wetlands depends primarily on whether it is in conflict with, or inconsistent with, the statutes of the state relative to the regulation of tidal wetlands. That general rule of law has been our accepted doctrine. If the general law is enacted after the ordinance covering the same field, it will take the place of the ordinance and supersede it. If the ordinance is enacted after the general law in conflict with it, the ordinance will be void. Where the statute and ordinance deal with the same subject matter, the statutory power will prevail, to the exclusion of the ordinance, so far as they conflict. Ordinances, subject to the exceptions noted, must not conflict with the statutes and must be in harmony with the general law of the state and with its public policy as expressed in its legislation and its law. Id., 438.

The state has preempted all authority over our tidal wetlands. The zoning regulations of the town of Greenwich pertaining to its control of tidal wetlands and regulated activity thereon, in particular, the definitions of regulated activity and wetland in § 4, and §§ 5.2a, 5.2b and 5.2c, conflict with the state tidal wetlands law, General Statutes §§ 22a-28 to 22a-35, and are, for that reason, void and of no legal effect. In view of that conclusion, it is unnecessary for the court to consider the remaining claims of the plaintiffs.

The action of the building inspector in denying the plaintiffs' applications for the two building permits was predicated solely on those void and illegal regulations pertaining to tidal wetlands, the premises being found by him to be otherwise in full conformity with the zoning regulations. The appeal from that decision was denied by the defendant on the same basis. The plaintiffs were aggrieved

thereby. Under the authority of General Statutes § 8-8, the court is compelled, in those circumstances, to reverse the action of the defendant and to bring it into conformity with the law. Therefore, the decision of the defendant is hereby revised and ordered recorded as follows: The appeal of Anthony G. Lauricella et al., owners, and Leonard Sansone, contract purchaser, from the denial by the building inspector of building permits for the construction of a one-family dwelling on lots 21, 22 and 23, in part, combined, on the westerly side of Newton Street at Miltiades Avenue, and a one-family dwelling on lots 23, in part, and 24, combined, on the westerly side of Newton Street, Riverside, R-12 zone, is sustained, those proposed dwellings being in full conformity with the requirements of the building zone regulations of the town of Greenwich.

The appeal of the plaintiffs is, accordingly, sustained.