[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
FACTS
This is an action for money damages brought by the plaintiff, the City of New London (New London), against the defendant, Lawrence Memorial Hospital (LM), by a writ, summons, and complaint filed with the court on May 4, 1994.
According to the complaint, the facts are as follows. On May 17, 1993, the City Council of New London passed an ordinance concerning recording fees for birth and death certificates. The ordinance states: CT Page 12968
 The Registrar of Vital Records shall collect, for the initial recording of any certificate of birth or death occurring in the City of New London, a record fee of $10.00.
From the period June 1, 1993 to February 28, 1994, LM forwarded 1,602 birth certificates to the New London City Hall for recording. Under the ordinance, LM allegedly owes the city $16,020 in fees.[1] In its answer filed with the court on November 3, 1994, LM, by way of special defenses, asserts that New London's ordinance conflicts with state law and is invalid. LM also claims that the ordinance constitutes an invalid tax.
On May 30, 1995, New London filed a motion for summary judgment alleging that there are no genuine issues of material fact in dispute and that it is entitled to summary judgment as a matter of law. The plaintiff's basic claim is that the ordinance is not preempted by any state statute, and is therefore a valid exercise of municipal power. On June 30, 1995, LM also moved for summary judgment claiming no genuine issues of material fact in dispute and seeking judgment as a matter of law. According to LM's motion, the New London ordinance is invalid because it conflicts and is preempted by General Statutes §§ 7-48 et seq. and 7-148. LM also alleges that New London's ordinance constitutes an invalid tax. Both parties have submitted briefs in support of their respective positions.
DISCUSSION
"Summary judgment is a method of resolving litigation when pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried." Wilson v. New Haven, 213 Conn. 277,279, 567 A.2d 829 (1989).
In reviewing the validity of a local ordinance, "every intendment is to be made in favor of the validity of the ordinance, and it is the duty of the court to sustain the ordinance unless invalidity is established beyond a reasonable doubt." Aaron v. Conservation Commission, 183 Conn. 532, 537, CT Page 12969441 A.2d 30 (1981). "Ordinances, [however], must not conflict with the statutes and must be in harmony with the general law of the State and with its public policy as expressed in its legislation and its law" Shelton v. City of Shelton,111 Conn. 433, 439, 150 A. 811 (1930).
General Statutes § 7-148 defines the scope of municipal powers, and subsection (c)(7)(H)(ix) specifically empowers a municipality to "[e]stablish a system to obtain a more accurate registration of births, marriages and deaths than the system provided by the general statutes in a manner not inconsistent with the general statutes." Relying on this statute, New London passed its ordinance in its attempt to maintain a more accurate recordation system by alleviating some of the administrative costs now currently borne by the city.
The statute suggests, however, that the state has previously set up a system regarding the recording of death and birth certificates, and that no local ordinance can be passed that would be inconsistent with those state laws. General Statutes § 7-48 requires that a birth certificate be filed in the city in which a live birth occurs not later that ten days after said birth.[2] Any person licensed to practice the healing arts or midwifery who fails to file a birth certificate as required by § 7-48 risks having his or her license revoked under General Statutes § 7-49.[3]
Admittedly, these statutes have nothing to do with recording fees, and merely state the procedure and place of filing birth certificates. Thus, under state law, LM is required to file its birth certificates with the city of New London, and the local ordinance does nothing to change state law. What the plaintiff's ordinance does do, however, is tack on a fee that must be paid whenever LM, or any other party, wishes to file birth or death certificates. The issue before the court is whether New London's recording fee ordinance conflict's with state law.
General Statutes § 7-73, entitled, "Fees of registrars. Marriage license surcharge," states in part:
 (a) To the person performing the duties required by the statutes relating to registration of births, marriages and deaths, the following fees shall be CT Page 12970 allowed: To the registrar for completing each record of birth by procuring and inserting the full name of the child, or for the recording, indexing, copying and endorsing of each birth, marriage or death certificate, two dollars; for ascertaining, recording and indexing each birth or death of which no certificate has been returned to him, one dollar; for the license to marry, ten dollars; for issuing each burial or removal permit, three dollars; for certifying to each certificate returned by physicians, midwives and persons having charge of burial places, five cents; for endorsing and recording each burial permit filed pursuant to law, ten cents; to the sexton or other person making returns required by section 7-72, fifty cents for each monthly return, and to the registrar, for recording the same, twenty-five cents for each certificate. All such fees, except those for certificates of license to marry and for removal permits, shall be paid by the town in which the duties for which said fees are allowed are performed.
In its brief in support of the motion for summary judgment, New London claims that § 7-73 is an antiquated statute from a by-gone era that merely sets the level of compensation of the registrars of vital statistics when those officials were paid on a fee basis rather than by a salary. Citing no legislative history or case to support its proposition, New London relies solely on the language of the statute that begins "[t]o the person performing the duties required by the statutes relating to registration of births, marriages, and deaths. . . ." Thus, because the fee is to be paid to the registrar and because the last sentence of the statute requires that all such fees be paid by the town in which the duties are performed, the plaintiff believes that the statute only sets the level of compensation to be paid to registrars, and is silent as to the charges relating to recording. Focusing on the same language, however, LM notes that the last sentence clearly states that all such fees are to be paid by the Town in which the duties are to be performed. Thus, in LM's view, the statute not only sets up a permissible fee schedule, but clearly mandates that the Town cover all fees associated with the filing and recording of birth and death certificates. CT Page 12971
A review of the legislative history of the act suggests that LM's interpretation of the statute is correct. At a hearing held before the Joint Committee of Finance, Revenue, and Bonding April 10, 1989, a representative of the Town Clerk's Association opposed the proposed 100% increase on fees fearing local public outrage against town clerks. The colloquy before the Committee is instructive and worth repeating here:
 John Brereton: Good morning, Senators. . . . I am here to speak, we are in opposition to SB1047, which calls for doubling of all the municipal clerk's recording fees and vital statistic fees. We think that is too large an increase. We would like, we have a bill in Judiciary Committee Right now, that calls for a smaller amount of an increase than what is called for here.
 Sen. DiBella: Why do you say that, John?
Brereton: Well —
 Sen. DiBella: I assume you are going on a death certificate to $4.00 now? Is that what you are talking about?
 Brereton: Under vitals?
 Sen. DiBella: Seal of official and notary public from $2.00 to $4.00.
 Brereton: Well, like on warranty deeds.
 Sen. DiBella: Birth certificates and warranty deeds and things of that nature, from —
 Brereton: Yes, we are proposing —
 Sen. DiBella: For marriage from $6.00 to $12.00. Do you think that is a lot of money to ask —?
 Brereton: Yes.
Sen. DiBella: $12.00? CT Page 12972
 Brereton: Well, our Association seems to think the public is going to be up in arms about it.
 Sen. DiBella: All right. There is no doubt that they are not going to be happy about having any increases. But the fee of such permit shall be $10 to $20. Any prize award — That is, $2-$4 on certificates of birth and registration, death certificates from — Death certificates and marriage certificates and birth certificates would go from $2 to $4?
 Brereton: Yes.
 Sen. DiBella: You just feel that the public will be outraged?
 Brereton: Yes, we had proposed for like a marriage license to go to $10.
 Sen. DiBella: Yes. Why do you pick $10 instead of $12?
 Brereton: That is what the Association came up with, sir.
 Sen. DiBella: Yes, but what is the basis for that?
 Brereton: Well, they just took it as, you know, about a 50% increase, really, rather than a 100 increase.
 Sen. DiBella: Well, what is your administrative costs?
 Brereton: Well, I was a Town Clerk for ten years, and I think that doubling fees has happened before with fishing license and so forth. There was quite a bit of flak. The people blame the Town Clerks. They don't blame the legislators.
 Sen. DiBella: Well, I guess the legitimate issue here is that this, does this cover your administrative overhead costs? Does the existing CT Page 12973 fee cover it?
 Brereton: Evidently, I think they it will. Not right now. That is why they have called for a moderate increase.
Conn. Joint Committee Finance, Revenue, and Bonding, Pt. 4, 1989 Sess., pp. 1394-1396.
In introducing the bill on the Senate floor, Senator DiBella explained its purpose by noting:
 This basically adjusts the fees on the specific registration of birth, marriage and death and permits of games of chance. The amendment is a compromise in terms of the increase in the rate and the rate would reflect less of an increase than the original bill had.
32 S. Proc., Pt. 7, 1989 Sess., p. 2317, remarks of Senator DiBella.
Once the fees were reduced in the Senate, the bill went before the House where the following debate occurred.
 DEPUTY SPEAKER POLINSKY: Representative Mulready, do you wish to summarize the [Senate] amendment.
 REP. MULREADY: (20th) Yes, Madam Speaker, I can summarize it very briefly.
. . .
 This amendment takes a number of the fee increases suggested in the bill itself and does away with them, particularly in the area of recording fees. It leaves an additional number, Madam Speaker. I move acceptance of the Senate Amendment "A".
. . .
 REP. O'Neill: (98th): I just have one question to the presenter, if I may, through you. I would assume and correct me if I'm wrong, that this is a revenue gaining bill for the State of Connecticut, CT Page 12974 is it? Through you.
 REP. MULREADY: Actually, Madam Speaker, this deals with municipal fees, so it's a revenue gaining bill primarily for municipalities. In fact, it, the fiscal note did not show any revenue for the State. Before the Senate Amendment, it showed about $9 million in local additional municipal fees.
32 H.R. Proc., Pt. 24, 1989 Sess., pp. 8229-8231.
In is also noteworthy that act was entitled "AN ACT INCREASING CERTAIN MUNICIPAL FEES RELATED TO RECORDING DOCUMENTS, REGISTRATION OF BIRTH, MARRIAGE, AND DEATH AND PERMITS FOR GAMES OF CHANCE." Public Acts 1989, No. 89-217. Thus, the title expresses a legislative intent to set the appropriate fees for the recording of birth and death certificates. Moreover, the colloquy before the Revenue Committee reveals that the chairman of the committee was concerned whether the proposed fees would cover the administrative costs of the local registrars. Because LM is located within the City of New London, the plaintiff claims that "the increase volume of filing has also resulted in the need for additional manpower and labor expenses to the City in order to comply with statutory requirements. . . ." (Plaintiff's brief, p. 2.) But the legislators clearly discussed whether the proposed fees would cover such expenses, and they subsequently set what they determined would be appropriate fees. To allow New London to implement this ordinance would allow the substitution of the city council's judgment for that of the state legislature while also ignoring the legislative history surrounding the passage of the bill. Permitting municipalities to set whatever fee they wanted would lead to uncertainly in a recording system that by its very nature must have some aspect of uniformity to ensure accuracy.
Finally, the statute itself suggests that when the legislature wanted local registrars to collect additional fees for recording, they explicitly mandated it. General Statutes § 7-73(b) states, "[a] twenty-dollar surcharge shall be paid to the registrar for each license to marry in addition to the fee for such license established pursuant to subsection (a) of this section. The registrar shall retain one dollar from each surcharge for administrative costs. . . ." Thus, when the CT Page 12975 legislature felt that the regular fees set in subsection (a) were not sufficient, they specifically allowed for a surcharge to be levied to cover any extra costs. No such language appears in subsection (a) of the statute relating to birth or death certificates.
Relying on the plain language of General Statutes § 7-73, clarified through a review of its legislative history, the court finds that New London's ordinance is inconsistent with state statutes and invalid as a matter of law.[4] If New London is concerned with the added administrative costs associated with being a host city to a hospital, its remedy is to petition the state legislature for relief, and not its city council. Therefore, New London's motion for summary judgment is denied. LM's cross-motion for summary judgment is granted.
CONCLUSION
For the above stated reasons, the plaintiff's motion for summary judgment is denied. The defendant's cross-motion for summary judgment, however, is granted.
Hurley, J.