The named plaintiff seeks to enjoin the defendant, Reduction Associates, Inc., from using its property in Colchester as a waste disposal facility for the disposal of unbaled waste material transported *Page 178 
from outside the town limits of Colchester. It is undisputed that unbaled waste material from the towns of West Hartford, New Haven, Old Saybrook and Milford is being transported to and disposed of at the Colchester facility. The basis of the plaintiff's request for injunctive relief is that Reduction Associates, Inc., is dumping and depositing unbaled waste in violation of the Colchester zoning regulations. The defendant claims that Reduction Associates, Inc., has a permit from the state department of environmental protection to dump and dispose of unbaled waste on its property and that the request for injunctive relief should therefore be denied.
On November 30, 1977, after hearing arguments of counsel, this court denied the plaintiff's application for a temporary injunction. On December 20, 1977, the court heard evidence on a similar application for a temporary injunction. This memorandum is the court's decision reached after hearing the evidence on December 20.
At the hearing on December 20 counsel explained to the court that the issues are complicated and numerous and that if evidence were presented on all the issues the trial could last for several weeks. It was therefore agreed by counsel to limit the evidence to two issues so that the court could make an early determination of whether a temporary injunction should issue. The issues before this court are as follows: (1) Were the zoning regulations of the town of Colchester preempted by the action of the state when it allowed the defendant, Reduction Associates, Inc., to dispose of unbaled waste on its property? (2) Would the plaintiff suffer irreparable harm if the temporary injunction were denied, and, if so, would that harm outweigh the harm suffered by opposing interests if the temporary injunction were granted? *Page 179 
The court finds the following facts in regard to the issue of preemption: The defendant, Reduction Associates, Inc., hereinafter referred to as Reduction, owns approximately 400 acres of land in the town of Colchester, which it bought from Andrew W. Bartlik, hereinafter Bartlik. Although the evidence presented in regard to the zone classification of Reduction's property was minimal, the court finds, for the purpose of this request for a temporary injunction, that the property is zoned as a residential agricultural zone.
Section 5.1 of the zoning regulations of the town of Colchester provides that land in a residential zone may be used for certain named uses and no others. It does not name sanitary landfill operations. Section 5.14 of the zoning regulations provides that the zoning commission "may permit as a special exception in accordance with Section 22 of these regulations a sanitary landfill area." Section 5.14.1 of the regulations provides that a "sanitary landfill area shall consist only of bulky waste and high density baled refuse."
In August of 1975 the town of Colchester and Bartlik applied to the department of environmental protection, hereinafter referred to as the DEP, for a permit to establish and operate a disposal area for baled waste on Bartlik's property in the town of Colchester. The permit was granted on December 19, 1975. On November 4, 1977, Reduction, having purchased the property from Bartlik, applied to the DEP for a modification of the permit so that it could receive unbaled solid waste on its property. On November 16, 1977, the DEP issued a modification of the original permit to allow the disposal of unbaled waste. On November 17, 1977, the zoning enforcement officer for the town of Colchester issued an order to Reduction to discontinue dumping unbaled waste on its property in violation of the *Page 180 
Colchester zoning regulations. Reduction has continued to receive and dispose of unbaled waste from the towns of West Hartford, New Haven, Old Saybrook and Milford.
The General Assembly has enacted a rather comprehensive state-wide solid waste management program, to be administered by the commissioner of environmental protection. General Statutes §§ 19-524a to 19-524nn.
Even prior to the passage of General Statutes §§ 19-524b, 19-524q and 19-524r,[1] it had been recognized by the courts that solid waste management was a problem of state-wide magnitude. In Yaworski
v. Canterbury, 21 Conn. Sup. 347, the issue involved an ordinance adopted by the town of Canterbury prohibiting the transportation of solid waste into that town from other localities. In upholding the plaintiff's contention that the local ordinance was void because it conflicted with the *Page 181 
state law on the same subject, the court stated (p. 351): "The ordinance is a prohibition of an activity in a field in which the General Assembly has seen fit to exercise its own power of regulation by the enactment of a general law affecting all the towns and cities of the state in connection with the transportation of garbage to another town for treatment, or through any town for disposal outside the state." The court held that the Canterbury ordinance was in conflict with the general law of the state and was therefore void.
The fact that the present action is concerned with a zoning ordinance in contrast to a municipal ordinance is of no effect in considering whether it is void because the subject matter of the ordinance is exclusively one for state regulation. In Lauricella
v. Planning and Zoning Board of Appeals of theTown of Greenwich, 32 Conn. Sup. 104, it was held that the state statutes pertaining to tidal wetlands preempted and rendered void local zoning regulations pertaining to tidal wetlands. That court stated *Page 182 
(pp. 113-14): "The interrelation between state and local law on the same subject matter is best expressed in the leading case of Shelton v. Shelton,111 Conn. 433. Unless there has been an express grant of power to the town of Greenwich or the matter is one of purely local and municipal concern which the state constitution has committed to it, neither of which exceptions applies in the case now before the court, the power of the town to enact the zoning regulations pertaining to tidal wetlands depends primarily on whether it is in conflict with, or inconsistent with, the statutes of the state relative to the regulation of tidal wetlands. That general rule of law has been our accepted doctrine. If the general law is enacted after the ordinance covering the same field, it will take the place of the ordinance and supersede it. If the ordinance is enacted after the general law in conflict with it, the ordinance will be void. Where the statute and ordinance deal with the same subject matter, the statutory power will prevail, to the exclusion of the ordinance, so far as they conflict. Ordinances, subject to the exceptions noted, must not conflict with the statutes and must be in harmony with the general law of the state and with its public policy as expressed in its legislation and its law. Id., 438.
"The state has pre-empted all authority over our tidal wetlands. The zoning regulations of the town of Greenwich pertaining to its control of tidal wetlands and regulated activity thereon ... are ... void and of no legal effect."
In Southern Ocean Landfill, Inc. v. Mayor andCouncil of the Township of Ocean, 64 N.J. 190, the Supreme Court of New Jersey ruled upon an action involving facts very similar to the present Colchester situation. Therein, the plaintiff corporation operated a sanitary landfill on property owned by it in the defendant town. In accordance with New *Page 183 
Jersey statutes the plaintiff had obtained the necessary permits to operate the landfill from the appropriate state agencies, including the department of environmental protection. A sanitary landfill regulation of the town, however, banned the depositing in a landfill in the town of "[s]ewerage or any other materials from septic tanks and cesspools." Even though the New Jersey Solid Waste Management Act provided that nothing in that act precluded "`the rights of the governing body of any municipality ... to adopt health or environmental protection ordinances or regulations more stringent than this act,'" the court nevertheless held that the local ordinance was void as in conflict with the general law of the state.
The case of Jamens v. Avon Township, 71 Mich. App. 70, like the present matter, involved the operation of a landfill. In discussing the authority of the department of natural resources, which is an agency comparable to the department of environmental protection, the court stated (p. 78) that "once the Department of Natural Resources ... has authorized a particular location as a landfill and has prescribed operating procedures, townships may supplement the DNR requirements with `... any additional reasonable regulations designed to eliminate any foreseeable health hazard. However, these local regulations may not exclude what the state has permitted.'" See cases cited therein.
The General Assembly has seen fit to exercise its own power of regulation of solid waste management in this state. To be sure, the General Assembly may allow localities to make additional provisions and otherwise further to control the disposal of solid waste located within their boundaries. The plaintiff claims that under § 8-2 of the General Statutes it is authorized to "regulate ... [the] use of buildings, structures and land for trade, *Page 184 
industry, residence or other purposes ...." It claims that in the absence of conflicting legislation giving the state preemptive rights over sanitary landfill areas, the town of Colchester has the right to regulate the use of land within the town for those purposes. The court finds, however, that the town's regulation disallowing the disposal of unbaled waste is in direct conflict with the state's permission to Reduction to dispose of unbaled waste on its property.
Section 19-524n provides that "[e]ach municipal authority shall make provisions for the safe and sanitary disposal of all solid wastes which are generated within its boundaries ...." Here, again, however, any such provisions must not be in conflict with the state's power to regulate solid waste management.
The plaintiff relies on that portion of § 19-524n which provides: "If arrangements are made for transportation of solid wastes to another municipality or out of the state, the provisions of section 7-161 and section 7-162 shall be complied with." Section 7-161 provides: "No plant for such treatment shall be established or operated outside of such town, city or borough until application for a permit to establish and operate the same has been filed with a commission ... of the town in which such plant is to be located and such permit granted by such commission ...." In a very recent decision, however, the Supreme Court held that § 7-161 is unconstitutional. Thus, the attempted delegation of such power is a nullity. New Milford v. SCAServices of Connecticut, Inc., 174 Conn. 146, 150.
Thus, while towns may regulate the use of land within their borders under § 8-2 of the General Statutes, and while they must provide for safe and *Page 185 
sanitary disposal of all solid wastes which are generated within their borders under § 19-524n, they must not enact any ordinances or regulations which are in conflict with the state statutes and regulations promulgated thereunder.
Further, inasmuch as § 7-161 of the General Statutes is now a nullity, it would appear that the state has exclusive jurisdiction over any regulations concerned with the disposal of solid waste being transported between towns.
The court therefore holds that the state's granting of the permit to Reduction to dispose of unbaled waste preempts the Colchester zoning regulation which disallows the disposal of unbaled waste within its borders.
Even if the court did not hold that the state's action had preempted the Colchester zoning ordinance, the court finds that it should deny the request for a temporary injunction. In deciding the application we must proceed according to familiar principles of equity with respect to temporary injunctions designed essentially to preserve the status quo until adjudication can be had upon the merits. The matter is one for the wise discretion of the court, the usual rule being that a plaintiff is not entitled to this extraordinary and peremptory relief unless he shows that otherwise he would suffer irreparable loss. Further, there must be a balancing of interests, so that a plaintiff, before his right has been established at trial, cannot cause loss to opposing interests far exceeding any that he may suffer. Penn Central Co. v. Public UtilitiesCommission of the State of Connecticut, 296 F. Sup. 893
(D. Conn.).
The town presented no evidence that it is suffering irreparable damage as the result of the current landfill operation. The town's own expert *Page 186 
witness, Edward Kant, testified to the effect that a properly engineered and properly operated landfill, whether involving unbaled or baled solid waste, would preclude environmental hazards such as a vector problem. The town presented no testimony by any expert familiar with the subject operation and how it is currently being conducted. On the other hand, Joseph Boren, director of the solid waste unit of the department of environmental protection, and John England, an environmental analyst employed by that department, both testified to the extensive research into and review of the environmental considerations connected with the subject operation and their conclusions that it does not present any adverse hazardous environmental impact.
In contrast to the lack of irreparable harm demonstrated by the town, both the state of Connecticut and Reduction demonstrated the drastic consequences which would result to each of them should a temporary injunction issue. The municipalities whose solid waste is being deposited in Colchester, i.e., New Haven, West Hartford, Milford and Old Saybrook, would be faced with an immediate crisis with no foreseeable realistic resolution. The testimony of Lawrence Tryon, general manager of Reduction, leads only to the conclusion that the issuance of a temporary injunction prohibiting the disposal of the solid waste from the above-named municipalities at Reduction's own landfill would result in the economic death of the company.
 The request for a temporary injunction is denied.