CITY OF SHELTON *v.* COMMISSIONER OF THE
DEPARTMENT OF ENVIRONMENTAL PROTECTION ET AL.

CITY OF SHELTON ET AL. *v.* CONNECTICUT
RESOURCES RECOVERY AUTHORITY

CITY OF SHELTON *v.* STANLEY J. PAC ET AL.
(12446)
(12447)

PETERS, HEALEY, PARSKEY, SHEA and GRILLO, Js.

Argued May 9—decision released June 26, 1984

*Robert A. Whitehead,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellants-cross appellees (defendant Department of Environmental Protection et al.).

*John C. Yavis, Jr.,* with whom were *Mark R. Sussman* and *Paul R. McCary,* for the appellant-cross appellee (defendant Connecticut Resources Recovery Authority).

*John H. Welch, Jr.,* with whom was *Jean Z. Maguire,* for the appellees-cross appellants (plaintiffs).

*Thomas J. Welsh,* for the appellees (intervening defendant Valley Citizens Action Group et al.).

PETERS, J. These appeals raise questions concerning the power of the Connecticut Resources Recovery Authority (CRRA) to operate a regional landfill in Shelton over the objection of the city and contrary to the city's zoning regulations. On May 11, 1984, we ordered the judgment of the trial court to be vacated in light of the enactment of Public Acts, 1984, No. 84-331. The following is the full opinion of this court.

The plaintiff, the city of Shelton, brought three separate actions seeking to prevent the CRRA from implementing its plan to operate a forty-two acre regional landfill in Shelton on a site where a smaller private landfill had previously been operated. In the first case, *Shelton* v. *Commissioner of the Department of Environmental Protection,*[1] the city took an administrative appeal from the decision of the Deputy Commissioner of Environmental Protection, John Anderson, granting the CRRA a solid waste disposal

---

[1] Several community organizations and an individual property owner opposed to the expansion of the Shelton landfill intervened in the administrative appeal. The position of the defendant-intervenors, Marthy Dougherty, Shelton Citizens Against the Dump, Pine Rock Civic Association and Valley Citizens Action Group, in the trial court and in this court, has been essentially the same as the position of the plaintiff city of Shelton.

permit for the proposed expanded landfill. In this administrative appeal the city claimed that the CRRA was a state agency and hence was not entitled to proceed without filing an environmental impact evaluation (EIE) as required by General Statutes § 22a-1b.[2] In the second case, *Shelton* v. *CRRA*,[3] the city sought to enjoin the defendant CRRA from operating the landfill on the grounds that the proposed expansion of the landfill violated the city's zoning regulations and that the CRRA had failed to obtain the city's consent as required by General Statutes § 22a-276.[4] In the third case, *Shelton*

[2] "[General Statutes] Sec. 22a-1b. EVALUATION BY STATE AGENCIES OF ACTIONS AFFECTING THE ENVIRONMENT. The general assembly directs that, to the fullest extent possible:

"(a) Each state department, institution or agency shall review its policies and practices to insure that they are consistent with the state's environmental policy as set forth in section 22a-1 and 22a-1a.

"(b) Each state department, institution or agency responsible for the primary recommendation or initiation of actions which may significantly affect the environment shall in the case of each such proposed action make a detailed written evaluation of its environmental impact before deciding whether to undertake or approve such action. All such environmental impact evaluations shall be detailed statements setting forth the following: (1) A description of the proposed action; (2) the environmental consequences of the proposed action, including direct and indirect effects which might result during and subsequent to the proposed action; (3) any adverse environmental effects which cannot be avoided and irreversible and irretrievable commitments of resources should the proposal be implemented; (4) alternatives to the proposed action, including the alternative of not proceeding with the proposed action; (5) mitigation measures proposed to minimize environmental impacts; (6) an analysis of the short term and long term economic, social and environmental costs and benefits of the proposed action; and (7) the effect of the proposed action on the use and conservation of energy resources."

[3] The plaintiffs in the second case were the city of Shelton and the Shelton Municipal Resources Recovery Authority. The two plaintiffs have been represented by the same counsel and have maintained identical positions throughout this litigation. For purposes of this appeal, we will treat them as one plaintiff, hereinafter "the city."

[4] "[General Statutes] Sec. 22a-276. (Formerly Sec. 19-524ii). CONDEMNATION BY AUTHORITY. (a) Before instituting any condemnation proceedings to obtain necessary real property, the authority shall have made diligent efforts to obtain said property by purchase or other means satisfactory to the authority and shall have ruled, by resolution, that in its judgment the

v. *Pac,* the city sought a declaratory judgment against the defendant Stanley Pac, the Commissioner of Environmental Protection, and others[5] that its local zoning regulations prevented the CRRA from expanding the landfill, notwithstanding the granting of the permit by the Department of Environmental Protection (DEP). After a consolidated trial of the three cases, the trial court sustained the city's administrative appeal, granted the requested injunction and ruled, in the declaratory judgment action, that the Shelton zoning regulations prohibited the CRRA's use of the DEP permit to expand the horizontal area of the landfill that

property is not otherwise obtainable save through condemnation proceedings.

"(b) Before instituting condemnation proceedings in any municipality the authority shall first advise and consult with the municipal authority having jurisdiction.

"(c) Unless the property to be condemned is located in an area zoned industrial, or in an area at or contiguous to an existing solid waste facility or waste disposal area, the authority shall, before proceeding with condemnation, first receive the written consent of the municipal authority having jurisdiction.

"(d) The authority shall not have the power to establish in any municipality, by condemnation proceedings or otherwise, a solid waste disposal area to be used for the deposit of solid wastes that have not received prior processing in a resources recovery facility until and unless it has first obtained the written consent of the municipal authority concerned.

"(e) Any condemnation proceedings of the authority shall be brought in accordance with section 48-12, except such proceedings shall in all cases be brought before the superior court of the judicial district of Hartford-New Britain.

"(f) Where a person entitled to an award in proceedings to condemn any real property for any of the purposes of this chapter remains in possession of said property after title is vested in the condemnor, the reasonable value of his use and occupancy of such property after title has been vested, or after any other time as fixed by agreement or by a determination of the court, shall be a lien against such award subject only to such other liens of record at the time title is vested in the condemnor."

[5] The other defendants were the CRRA and Alfred J. Gallucci, the previous owner of the landfill property.

had previously covered a portion of the site. The defendants have appealed from the judgments in all three cases.[6]

On appeal the defendants originally claimed that the trial court had erred in concluding: (1) that the CRRA was a state agency; (2) that the proposed expansion constituted the "establishment" of a landfill for which local consent was required, and (3) that local zoning regulations overrode the statewide planning decisions of the CRRA and the DEP.

During the pendency of this appeal, the General Assembly enacted legislation directed at the specific dispute now before us. Public Acts 1984, No. 84-331 provides in § 1 that the CRRA "shall not be construed to be a department, institution or agency of the state."[7] The act provides further in § 2 that "[n]otwithstanding the provisions of subsection (c) of section 22a-208 of the general statutes . . . concerning the right of any local body to regulate, through zoning, land usage for solid waste disposal and section 22a-276 of the general statutes, the Connecticut resources recovery authority may use and operate as a solid waste disposal area, pursuant to a [DEP] permit . . . any real property owned by said authority on or before the effective date of this act, any portion of which has been operated as a solid waste disposal area . . . ."[8]

---

[6] The city cross-appealed from the portion of the judgment in *Shelton* v. *Pac* holding that vertical expansion did not violate local zoning regulations.

[7] Public Acts 1984, No. 84-331, § 1 provides:

"Section 1. Subsection (a) of section 22a-261 of the general statutes is repealed and the following is substituted in lieu thereof:

"(a) There is hereby established and created a body politic and corporate, constituting a public instrumentality and political subdivision of the state of Connecticut established and created for the performance of an essential public and governmental function, to be known as the Connecticut resources recovery authority. THE AUTHORITY SHALL NOT BE CONSTRUED TO BE A DEPARTMENT, INSTITUTION OR AGENCY OF THE STATE."

[8] Public Acts 1984, No. 84-311, § 2 provides:

"Sec. 2. (NEW) Notwithstanding the provisions of subsection (c) of sec-

The defendants now claim that the legislature has resolved all of the issues on appeal in their favor. The plaintiff city argues, to the contrary, that: (1) Public Acts 1984, No. 84-331 should not be applied retroactively to this case; (2) section 2 of the act does not override the city's general zoning power pursuant to General Statutes § 8-2; and (3) the act is unconstitutional. We find none of the city's claims persuasive. Accordingly we hold that in light of the enactment of Public Acts 1984, No. 84-331, the judgments of the trial court must be set aside and the cases remanded with direction to dismiss the administrative appeal and to render judgment for the defendants in the remaining cases.

---

tion 22a-208 of the general statutes, as amended by public act 83-189, concerning the right of any local body to regulate, through zoning, land usage for solid waste disposal and section 22a-276 of the general statutes, the Connecticut resources recovery authority may use and operate as a solid waste disposal area, pursuant to a permit issued under section 22a-208 of the general statutes, as amended by public act 83-189, and section 22a-430 of the general statutes, any real property owned by said authority on or before the effective date of this act, any portion of which has been operated as a solid waste disposal area, provided the authority pays the municipality in which such property is located one dollar per ton of unprocessed solid waste received from outside of such municipality and disposed of at the solid waste disposal area by the authority. Any payment shall be in addition to any other agreement between the municipality and the authority. The provisions of section 12-19a of the general statutes shall not be construed to apply to any such real property."

General Statutes § 22a-208 (c) provides: "POWERS AND DUTIES OF COMMISSIONER RE SOLID WASTE MANAGEMENT. QUALIFICATIONS OF FACILITY OPERATORS. FACILITY PERMITS AND PLANS. . . .

"(c) No solid waste facility shall be built, established or altered after July 1, 1971, until the plan and design and method of operation of the same have been filed with the department and approved by the commissioner by the issuance of a permit, provided, nothing in this chapter or in chapter 446e shall be construed to limit the right of any local governing body to regulate, through zoning, land usage for solid waste disposal."

For the text of General Statutes § 22a-276, see footnote 4, supra.

## I

The city claims first that the new act does not govern this case because the statute does not expressly state that it is intended to be applied retroactively. The city reasons that ordinary canons of statutory construction require us to presume that the legislature intended to change rather than to clarify the existing law; *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.,* 193 Conn. 208, 232, 477 A.2d 988 (1984); *Vartuli* v. *Sotire,* 192 Conn. 353, 364 n.12, 472 A.2d 336 (1984); *Heffernan* v. *Slapin,* 182 Conn. 40, 49, 438 A.2d 1 (1980); and that the statutory changes in this case deprive the city of vested rights. There is no merit to this claim.

At the outset we note that the city's retroactivity claim has no bearing on the applicability of § 2 of the act. The issue now before us concerns the CRRA's *future* operation of an expanded landfill without the city's consent and arguably in violation of the city's zoning regulations. The act does not regulate any past transactions.

In contrast, § 1 of the act arguably may have a retrospective effect. If that section eliminated a previous requirement that the CRRA file an environmental impact evaluation as a precondition to obtaining a solid waste disposal permit, its application in this case would validate a permit that was invalid when issued.[9] We agree with the defendants, however, that § 1 effected no change in the law.

The city's argument rests on our usual presumption that, in enacting a statute, the legislature intended a change in existing law. *Vartuli* v. *Sotire,* supra. This

---

[9] Of course, even if the permit now held by the CRRA were invalid, the prospective application of § 1 would permit the CRRA to seek a new permit without filing an environmental impact evaluation.

presumption, like any other, may be rebutted by contrary evidence of the legislative intent in the particular case. "An amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act." *Tax Commissioner* v. *Estate of Bissell,* 173 Conn. 232, 246, 377 A.2d 305 (1977); *Lee* v. *Board of Education,* 181 Conn. 69, 75, 434 A.2d 333 (1980).

As originally enacted, General Statutes § 22a-261 provided for the creation of the CRRA as a "body politic and corporate, constituting a public instrumentality and political subdivision of the state . . . ."[10] The CRRA was authorized, inter alia, to employ its own staff, to enact by-laws, to retain counsel and to issue bonds. See General Statutes §§ 22a-265 through 22a-269. Its bonds are not obligations of the state. General Statutes § 22a-272 (a).

Prior to the trial court decision in this case, a different trial court had concluded that the CRRA was not a state agency subject to the Uniform Administrative Procedure Act (UAPA); General Statutes §§ 4-166 through 4-197. *DeFonce Construction Corporation* v. *Connecticut Resources Recovery Authority,* Court of Common Pleas, Fairfield County, Docket No. 115357 (1977), appeal dismissed, 177 Conn. 472, 418 A.2d 906 (1979). The trial court below then held to the contrary. In light of the conflicting judicial interpretations of the prior law and the legislature's undisputed intent to override the decision of the trial court in this case, we

---

[10] "[General Statutes] Sec. 22a-261. (Formerly Sec. 19-524t). RESOURCES RECOVERY AUTHORITY ESTABLISHED. PRESIDENT. DIRECTORS. (a) There is hereby established and created a body politic and corporate, constituting a public instrumentality and political subdivision of the state of Connecticut established and created for the performance of an essential public and governmental function, to be known as the Connecticut resources recovery authority."

are persuaded that § 1 of the act was intended to clarify and not to alter the preexisting law. Accordingly, the city's retroactivity claim must fail.

## II

The city next contends that Public Acts 1984, No. 84-331 does not resolve the conflict in this case between the DEP permit and the Shelton zoning regulations. The city argues that although § 2 of the act grants power to the CRRA to operate a landfill "[n]otwithstanding the provisions of subsection (c) of section 22a-208 of the general statutes . . . concerning the right of any local body to regulate, through zoning, land usage for solid waste disposal . . . ," the act does not abrogate the city's general zoning power pursuant to General Statutes § 8-2.[11] Section 8-2 cannot support the exclusion of the proposed landfill by zoning, how-

---

[11] "[General Statutes] Sec. 8-2. REGULATIONS. The zoning commission of each city, town or borough is authorized to regulate, within the limits of such municipality, the height, number of stories and size of buildings and other structures; the percentage of the area of the lot that may be occupied; the size of yards, courts and other open spaces; the density of population and the location and use of buildings, structures and land for trade, industry, residence or other purposes, and the height, size and location of advertising signs and billboards. Such zoning commission may divide the municipality into districts of such number, shape and area as may be best suited to carry out the purposes of this chapter; and, within such districts, it may regulate the erection, construction, reconstruction, alteration or use of buildings or structures and the use of land. All such regulations shall be uniform for each class or kind of buildings, structures or use of land throughout each district, but the regulations in one district may differ from those in another district, and may provide that certain classes or kinds of buildings, structures or use of land are permitted only after obtaining a special permit or special exception from a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals, whichever commission or board the regulations may, notwithstanding any special act to the contrary, designate, subject to standards set forth in the regulations and to conditions necessary to protect the public health, safety, convenience and property values. Such regulations shall be made in accordance with a comprehensive plan and shall be designed to lessen congestion in the streets; to secure safety from fire, panic, flood and other dangers; to promote health and the general welfare; to provide

ever, because in the absence of § 22a-208 (c), statewide regulation of solid waste disposal activities had preempted Shelton's exclusionary zoning regulations.

It is useful first to consider the origin of § 22a-208 (c). In *Colchester* v. *Reduction Associates, Inc.*, 34 Conn. Sup. 177, 184–85, 382 A.2d 1333 (1977), the Court of Common Pleas for New London county held that the zoning regulations of the town of Colchester could not prohibit the disposal of unbaled waste within the town when the DEP had issued a permit approving the defendant's disposal activities because state law had preempted the local regulations.[12] In response to the court's holding in *Colchester* and to several other

adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population and to facilitate the adequate provision for transportation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration as to the character of the district and its peculiar suitability for particular uses and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality. Zoning regulations may be made with reasonable consideration for the protection of historic factors and for the protection of existing and potential public surface and ground drinking water supplies and may provide that proper provision be made for sedimentation control, and the control of erosion caused by wind or water. Such regulations may also encourage energy-efficient patterns of development, the use of solar and other renewable forms of energy, and energy conservation. The regulations may also provide for incentives for developers who use passive solar energy techniques, as defined in subsection (b) of section 8-25, in planning a residential subdivision development. The incentives may include, but not be limited to, cluster development, higher density development and performance standards for roads, sidewalks and underground facilities in the subdivision. Such regulations shall not prohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of such regulations. Any city, town or borough which adopts the provisions of this chapter may, by vote of its legislative body, exempt municipal property from the regulations prescribed by the zoning commission of such city, town or borough; but unless it is so voted municipal property shall be subject to such regulations."

[12] *Colchester* v. *Reduction Associates, Inc.*, 34 Conn. Sup. 177, 382 A.2d 1333 (1977), involved the solid waste disposal activities of a private individual rather than the CRRA. The local consent provisions of § 22a-276 were, therefore, inapplicable in that case.

unpopular regional waste disposal proposals, the legislature amended § 22a-208 (c) to provide that a DEP solid waste disposal permit did not override local zoning.[13] The effect of § 2 of the 1984 act is to eliminate the express zoning authority conferred by § 22a-208 (c) and to restore the law to its state at the time of the *Colchester* decision. We agree with the court in *Colchester* that the general zoning authority conferred by § 8-2 does not extend to the enactment of zoning regulations that conflict with a DEP permit.

As we recently stated, "[a] local ordinance is preempted by a state statute whenever the legislature has demonstrated an intent to occupy the entire field of regulation on the matter; *East Haven* v. *New Haven,* 159 Conn. 453, 469, 271 A.2d 110 (1970); or, as here, whenever the local ordinance irreconcilably conflicts with the statute. *Shelton* v. *City of Shelton,* 111 Conn. 433, 447, 150 A. 811 (1930). Accord, *Times Mirror Co.* v. *Division of Public Utility Control,* 192 Conn. 506, 511, 473 A.2d 768 (1984)." *Dwyer* v. *Farrell,* 193 Conn. 7, 14, 475 A.2d 257 (1984). "Whether an ordinance conflicts with a statute or statutes can only be determined by reviewing the policy and purposes behind the statute and measuring the degree to which the ordinance frustrates the achievement of the state's objectives. See *Aaron* v. *Conservation Commission,* [183 Conn. 532, 542–44, 441 A.2d 30 (1981)]; *Connecticut Theatrical Corporation* v. *New Britain,* [147 Conn. 546, 552–53, 163 A.2d 548 (1960)]; see generally 6 McQuillin, Municipal Corporations (3d Ed. Rev.) § 21.35." *Dwyer* v. *Farrell,* supra, 12.

In 1973 the legislature created the CRRA as part of a comprehensive program whose purpose was to address the growing statewide problems of solid waste disposal. The Solid Waste Management Services Act;

[13] See 21 S. Proc., Pt. 3, 1978 Sess., pp. 1238–39, 1246, 1248–49, 1254–55; 21 H. R. Proc., Pt. 4, 1978 Sess., p. 1358.

General Statutes §§ 22a-257 through 22a-281; was based on express legislative findings, inter alia, "that prevailing solid waste disposal practices generally, throughout the state, result in unnecessary environmental damage, waste valuable land and other resources, and constitute a continuing hazard to the health and welfare of the people of the state; that local governments responsible for waste disposal services are becoming hard pressed to provide adequate services at reasonable costs . . . [and] that the development of systems and facilities and the use of the technology necessary to initiate large-scale processing of solid wastes have become logical and necessary functions to be assumed by state government . . . ." General Statutes § 22a-258. The legislature further declared the policy of the state "that solid waste disposal and resources recovery facilities and projects are to be implemented either by the state of Connecticut or under state auspices . . . ." General Statutes § 22a-259 (2). The CRRA was created to make and implement statewide solid waste management plans; General Statutes § 22a-262; subject to the authority of the Commissioner of Environmental Protection to issue permits for any solid waste disposal facility. General Statutes § 22a-208.

These statutes evidence a legislative intent to commit the difficult regional problems of solid waste disposal to regional and statewide solution. The legislature could reasonably have determined that only a decision-making body with a mandate to consider the needs of more than one community could adequately balance the competing concerns of various localities within the state. Local zoning regulations, such as Shelton's, which operate to exclude the facilities that the CRRA has found necessary, and the DEP has found environmentally acceptable, frustrate the explicit purposes of the state statutes and are therefore preempted.

## III

Finally, the city raises two constitutional objections to Public Acts 1984, No. 84-331.[14] First, the city claims that by removing the zoning and approval powers of the city of Shelton alone, the act violates the prohibition on special privileges contained in article first, § 1, of the Connecticut constitution. Second, it claims that the act is special legislation in violation of the home rule provisions of article tenth. We find no merit in either claim.

Article first, § 1, of the Connecticut constitution provides that "no man or set of men are entitled to exclusive public emoluments or privileges from the community."[15] A state statute is invalid under this clause only if it "directs the granting of an emolument or privilege to an individual or class without any purpose, expressed or apparent, to serve the public welfare thereby . . . ." *Warner* v. *Gabb,* 139 Conn. 310, 313, 93 A.2d 487 (1952); *Beccia* v. *Waterbury,* 192 Conn. 127, 133–34, 470 A.2d 1202 (1984); *Wilson* v. *Connecticut Product Development Corporation,* 167 Conn. 111, 115, 355 A.2d 72 (1974).

On its face, this constitutional provision is inapplicable to the present case. The act confers no public emolument on the CRRA for its private gain as a corporation

[14] Although as a general rule a city, which is a creation of the state, does not have standing to challenge the constitutionality of a state statute, we have recognized an exception to this rule where the city is properly in court on a nonconstitutional question. *Berlin* v. *Santaguida,* 181 Conn. 421, 424, 435 A.2d 980 (1980); *Connecticut Light & Power Co.* v. *Norwalk,* 179 Conn. 111, 114–15, 425 A.2d 576 (1979); *Hillier* v. *East Hartford,* 167 Conn. 100, 103, 355 A.2d 1 (1974). The city of Shelton's constitutional claims come within this exception.

[15] Article first, § 1, of the Connecticut constitution provides as follows: "All men when they form a social compact, are equal in rights; and no man or set of men are entitled to exclusive public emoluments or privileges from the community."

or for the gain of its individual members. Rather, the act lifts statutory barriers to the CRRA's accomplishment of its statutory public purpose—to plan, construct and manage regional waste disposal facilities.[16]

The city raises a more substantial challenge to the act as special legislation forbidden by article tenth of our constitution. Article tenth, § 1, provides in part that "[a]fter July 1, 1969, the general assembly shall enact no special legislation relative to the powers, organization, terms of elective offices or form of government of any single town, city or borough . . . ."[17] Under § 2 of the act, local authority is superseded only with respect to "any real property owned by said authority on or before the effective date of this act, any portion of which has been operated as a solid waste disposal area." Concededly, the only such property now owned by the CRRA is the site in Shelton. The city argues that

---

[16] By removing Shelton's authority to veto or zone out a solid waste disposal facility, the statute accomplishes the same purpose as if it had provided explicitly that a regional facility was to be located in Shelton. An enactment in the latter form could not be said to violate the equal protection clause. We do not perceive any constitutional significance in the form of the statute before us.

[17] Article tenth, § 1, of the Connecticut constitution provides as follows:

"OF HOME RULE

(DELEGATION OF LEGISLATIVE AUTHORITY TO POLITICAL SUBDIVISIONS. TERMS OF TOWN, CITY AND BOROUGH ELECTIVE OFFICERS. SPECIAL LEGISLATION.)

"Sec. 1. The general assembly shall by general law delegate such legislative authority as from time to time it deems appropriate to towns, cities and boroughs relative to the powers, organization, and form of government of such political subdivisions. The general assembly shall from time to time by general law determine the maximum terms of office of the various town, city and borough elective offices.[1] After July 1, 1969, the general assembly shall enact no special legislation relative to the powers, organization, terms of elective offices or form of government of any single town, city or borough, except as to (a) borrowing power, (b) validating acts, and (c) formation, consolidation or dissolution of any town, city or borough, unless in the delegation of legislative authority by general law the general assembly shall have failed to prescribe the powers necessary to effect the purpose of such special legislation."

in singling out Shelton as the only community for which to eliminate the local zoning and approval rights granted by General Statutes §§ 22a-208 (c) and 22a-276, the act diminishes the powers of a single city in violation of article tenth. We disagree.

The purpose of home rule is twofold: "to relieve the General Assembly of the burdensome task of handling and enacting special legislation of local municipal concern and to enable a municipality to draft and adopt a home rule charter or ordinance which shall constitute the organic law of the city . . . . [H]ome rule legislation was enacted 'to enable municipalities to conduct their own business and control their own affairs to the fullest possible extent in their own way . . . .' " *Caulfield* v. *Noble,* 178 Conn. 81, 86–87, 420 A.2d 1160 (1979), quoting *Fragley* v. *Phelan,* 126 Cal. 383, 387, 58 P. 923 (1899). Our constitutional home rule provision, therefore, prohibits the legislature from encroaching on the local authority to regulate matters of purely local concern, such as the organization of local government or local budgetary policy. *Caulfield* v. *Noble,* supra, 90–91.

It does not follow from our constitutional commitment to home rule that the state legislature is thereby precluded from addressing problems of statewide concern whenever the remedy affects a single locality. By its terms, article tenth restricts only the enactment of special and not of general legislation. Although we have not previously considered whether article tenth places any limitations on legislation dealing with statewide concerns, we may find guidance in the decisions of other state courts interpreting similar provisions in their own state constitutions.

In *West Allis* v. *Milwaukee County,* 39 Wis. 2d 356, 365–70, 159 N.W.2d 36 (1968), cert. denied, 393 U.S. 1064, 89 S. Ct. 717, 21 L. Ed. 2d 707 (1969), the Wis-

consin Supreme Court upheld a state statute authorizing the county of Milwaukee to construct and operate a regional waste disposal system against a claim that the statute violated the home rule provision of the Wisconsin constitution.[18] The court explained: "[W]hen the legislature deals with matters that are primarily of statewide concern, it may deal with them free of any restriction contained in the home-rule amendment. The legislature can thus make effective a law touching on a matter of statewide concern in one city and not in another, provided that the classification is proper. The home-rule amendment does not limit the right of the legislature to deal with matters of statewide concern, even if, in so dealing, some cities and not others are affected. If, however, the matter enacted by the legislature is primarily of local concern, a municipality can escape the strictures of the legislative enactment unless the enactment applies with uniformity to every city and village." *West Allis* v. *Milwaukee County,* supra, 365–66.

Similarly, the Supreme Judicial Court of Massachusetts has held that a home rule amendment that limits the state legislature's power "to act in relation to cities and towns"[19] does not preclude the legislature from "acting on matters of state, regional, or general concern, even though such action may have special effect upon one or more individual cities or towns." *Opinion*

---

[18] Article XI, § 3, of the Wisconsin constitution provides in part:

"Cities and villages organized pursuant to state law and hereby empowered, to determine their local affairs and government, subject only to this constitution and to such enactments of the legislature of state-wide concern as shall with uniformity affect every city or every village. The method of such determination shall be prescribed by the legislature. . . ."

[19] Section 8 of the Home Rule Amendment, art. 89 of the Amendments to the Constitution of the Commonwealth of Massachusetts provides in pertinent part: "The general court shall have the power to act in relation to cities and towns but only by general laws which apply alike to all cities, or to all towns, or to all cities and towns, or to a class of not fewer than two . . . ."

*of the Justices,* 356 Mass. 775, 787–78, 250 N.E.2d 547 (1969); *Town of Hadley* v. *Town of Amherst,* 372 Mass. 46, 49–50, 360 N.E.2d 623 (1977); see generally 2 McQuillin, Municipal Corporations (3d Ed. 1979) §§ 4.80 through 4.85.

As we noted above in discussing the preemption of local zoning by statewide environmental regulation, solid waste disposal presents ever increasing problems that are no longer subject to local solution. The regional and statewide solution of these problems involves a delicate political balance among the competing interests of numerous individual communities. The resolution of such conflicts is appropriately confided to the General Assembly, where the whole population of the state is represented.

The city of Shelton is, of course, correct that the effect of the challenged act is the same as if the act had provided expressly that there shall be a regional landfill in Shelton notwithstanding the city's objection. If reasonably necessary to effectuate important statewide policies, however, such individualized problem solving does not violate the home rule provisions of article tenth.

The legislature, in enacting Public Acts 1984, No. 84-331 has resolved all of the issues before us on this appeal. Having rejected the city's constitutional challenges to the act, we remand the cases to the trial court with directions to dismiss the administrative appeal and to render judgment for the defendants in the remaining two cases.

In this opinion HEALEY, PARSKEY and GRILLO, Js., concurred.

SHEA, J., dissenting. "All men when they form a social compact, are equal in rights; and no man or set of men are entitled to exclusive public emoluments or

privileges from the community." Conn. Const., art. I, § 1. This provision of our state constitution has been construed to embody the same values inherent in the guaranty of "equal protection of the laws" in the fourteenth amendment to our federal constitution. *Barnes v. New Haven,* 140 Conn. 8, 14, 98 A.2d 523 (1953); *State ex rel. Higgins v. Civil Service Commission,* 139 Conn. 102, 105, 90 A.2d 862 (1952).

The majority opinion brushes lightly by these constitutional safeguards against special treatment of persons or groups where there is no valid basis for distinguishing between them, concluding that the public act, Public Acts 1984, No. 84-331, "confers no public emolument on the CRRA for its private gain" but "merely lifts statutory barriers to the CRRA's accomplishment of its statutory public purpose . . . ." What the opinion overlooks is that this enactment, by excluding the only municipality to which it applies,[1] the city of Shelton, from exercising the prerogative given by General Statutes § 22a-276 (d) to every municipality in this state to withhold consent to and thereby prevent the establishment of a solid waste disposal area within its confines, creates an exclusive privilege in the remaining 168 towns which is not being accorded to the city of Shelton in this instance. Conversely, the new public act deprives

[1] The record is not entirely clear as to whether Shelton is the only municipality to which § 2 of Public Acts 1984, No. 84-331 applies. By its terms the act removes the necessity for consent of a local governmental body given by General Statutes § 22a-276(d) with respect only to property owned by CRRA "on or before the effective date of this act, any portion of which has been operated as a solid waste disposal area." Although it is clear from the record that the proposed site in Shelton qualifies for the exemption created by the public act, the basis for the assumption in the majority opinion that no location in any other municipality would also satisfy the criteria of the act is apparently a claim to that effect in the plaintiffs' brief. Because the record on the point is not clear, I would remand for further proceedings to determine this factual issue. For the purpose of this dissenting opinion, however, I adopt the assumption of the majority that § 2 of the public act affects no other municipality but Shelton.

Shelton of a statutory privilege given to all other municipalities and thus denies its citizens of "equal protection of the laws." Since the legislature has chosen to give every other community in the state a veto upon the location within its borders of a CRRA dump, the exclusion of the citizens of Shelton from this grant of power is a flagrant example of conferring an exclusive privilege upon one "set of men" which is refused to another as well as a clear illustration of a denial of "equal protection of the laws."

No one can question the seriousness of the problem of waste disposal in our industrial society and the necessity for comprehensive governmental action towards a solution. At this stage of our technology, the methods available and feasible for solving the problem normally entail a substantial burden upon the unfortunate locality selected as a waste disposal area. While everyone recognizes the necessity for the establishment of such areas, few municipalities would volunteer as recipients of the refuse we continually generate, particularly that emanating from sources beyond their borders. The city of Shelton invoked its authority under § 22a-276 (d) to refuse permission for a waste disposal area within its territory. The legislature has now overturned Shelton's exercise of this statutory privilege while continuing to extend it to every other municipality. Such disparate treatment of a single community in this state cannot in my judgment be squared with the basic principle of equality contained in our state and federal constitutions.

Although I can perceive no valid basis in the present record for singling out the proposed CRRA waste disposal site in Shelton for special treatment, I would not foreclose the defendants from an opportunity to present evidence which might justify the disparity created by the public act in respect to the necessity of local governmental consent. It is possible that sufficiently sound

reasons exist to support this facially discriminatory legislation. From the record before us, however, I can only surmise as to what they may be.

Accordingly, I dissent and would remand the case for further proceedings relating to the constitutionality of Public Acts 1984, No. 84-331.