[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM DATED JUNE 11, 1996
Plaintiffs Polymer Resources, Ltd. ("Polymer") and Leslie M. Klein appeal from three decisions of the Defendant Town of Farmington Plan and Zoning Commission (the "Commission"). In Docket No. CV 94-0463324S ("Polymer I") Plaintiffs appeal from the Commission's decision of July 19, 1994. In Docket No. CV 94-0464628S ("Polymer II") the Plaintiffs appeal from the Commission's decision of October 11, 1994. In Docket No. CV 94-0464629S ("Polymer III") the Plaintiffs appeal from another Commission decision of October 11, 1994.
The appeals in Polymer I and Polymer II were consolidated for trial and heard on January 19, 1996. The appeal in Polymer III CT Page 4875 was heard on March 15, 1996. Since the appeals are intertwined, the parties agreed that the 120-day period for rendering of the Court's decision on each of these appeals (see General Statutes § 51-183b) would not commence to run until after the conclusion (including filing of post-trial briefs) of the hearing on Polymer III.
Each appeal is from a decision denying in whole or in part an application by Plaintiffs for site plan modification. The subject property, located at 656 New Britain Avenue in Farmington, is owned by the Plaintiff Klein and occupied by the Plaintiff Polymer, which conducts a manufacturing operation thereon. The subject decisions affect the use of the property and the conduct of Polymer's business. The Court finds, and the Defendant concedes, that the Plaintiffs are parties aggrieved and have standing to take these appeals. Hall v. Planning Commission,181 Conn. 442, 444 (1980).
The property is located in an Industrial CR Zone, permitted uses in which are those specified as allowed in an Industrial C 1 Zone. Town of Farmington Zoning Regulations ("the Regulations"), Article II, Sections 13-14. Such uses are allowed only by special permit, the requirements and standards for which are set forth in Article IV, Section 12.
Permitted uses include:
 Any establishment, the principal use of which is manufacturing, fabricating, processing, producing, assembling, cleaning, servicing, testing or repairing of materials.
Regulations, Article IV B2. The property has been approved for this use and a special permit has issued. Polymer I, Exhibits 9h-k.
At its November 21, 1988 regular meeting, the Commission approved a special permit for a 34,000 square foot addition limited to warehouse use. Polymer I, Exhibits 9h-i. At its December 4, 1989 regular meeting, the Commission considered an application for modification of the previous special permit approval to allow a 24,285 square foot addition "for both manufacturing and warehousing." Polymer I, Exhibit 9j. In approving this application, the Commission noted that these special permit approvals were "for occupancy by Polymer Resources, Ltd., a plastic extruder." Polymer I, Exhibit 9k. The CT Page 4876 property was then purchased by the Plaintiff Klein and occupied for the permitted use by the Plaintiff Polymer.
Judicial review of decisions rendered by local zoning authorities is limited. "The controlling question for the trial court is whether the zoning board acted arbitrarily or illegally or so unreasonably as to have abused its discretion." Horn v.Zoning Board of Appeals, 18 Conn. App. 674, 676 (1989). "The discretion of the local board is a liberal one to be overturned only when the board has not acted fairly or has no valid reasons for acting as it did, or with improper motives." Id. Where the zoning authority has stated reasons for its action, the test is "whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations." Marmah, Inc. v. Greenwich, 176 Conn. 116, 118
(1978). The trial court cannot substitute its judgment for that of the local zoning authority where it appears that an honest judgment has been reasonably and fairly exercised after a full hearing and, in such circumstances, the trial court must be cautious about disturbing the authority's decision.Raybestos-Manhattan, Inc. v. Planning Zoning Commission,186 Conn. 466, 469 (1982). The question, upon judicial review, is not whether the trial court would have reached the same conclusion, but whether the record before the authority supports the decision made. Burnham v. Planning Zoning Commission, 189 Conn. 261, 265
(1983).
General Statutes § 8-3(g) authorizes municipal zoning regulations to require site plans. The term "site plan," as used in § 8-3(g), "include[s] the entire package of documents submitted to a zoning commission to aid in its determination of the conformity of the proposed building to the applicable zoning regulations." SSM Associates Limited Partnership v. Plan ZoningCommission, 211 Conn. 331, 334 (1989). Regulations Article IV Section 12C2 requires that applications for a special permit or site or building modifications to be accompanied by an application for site plan approval.
In ruling on a site plan application, the commission acts in its ministerial capacity, rather than in its quasi-judicial or legislative capacity. Allied Plywood, Inc. v. Planning ZoningCommission, 2 Conn. App. 506, 512 (1984). If the site plan complies with the applicable regulations, the commission has no further discretion and must approve it. Kusinski v. Lawlor,
CT Page 4877177 Conn. 420, 427 (1979). However, an application to revise a site plan for an approved special permit must be evaluated in light of the conditions set out in the special permit regulations.Barberino Realty Development Corp. v. Planning ZoningCommission, 222 Conn. 607, 614 (1992).
Barberino, however, involved a substantial change in building configuration, size and number for a proposed elderly housing project initially approved ten years earlier, but the construction of which had not yet commenced. These appeals, particularly Polymer I and II involve only relatively minor site plan modifications in connection with a permitted use in operation.[1]
The three appeals will be reviewed in order.
I. Polymer I
In Polymer I, the Plaintiffs applied for (1) final approval of a previously submitted as built landscape plan, and (2) approval of "current on site conditions" including (a) the presence of three flagpoles and illumination of the same, and (b) the location of a dumpster/compactor in front of the building. The Commission (1) approved the modified landscape plan, (2) approved two of the three flagpoles with the stipulation that they not be illuminated, (3) denied approval of the third flagpole and required its removal, and (4) denied approval for the location of the dumpster. The Plaintiffs have appealed from these denials.
General Statutes § 8-3c(g) requires the Commission to "state upon its records the reason for its decision." The notice sent to Plaintiffs fails to state any reasons. Exhibit 13. However, the minutes of the July 19, 1994 meeting (Exhibit 12) at which the decision was rendered state as follows:
 The Commission found that the third flagpole for Polymer's corporate logo constituted a sign and thus was not in keeping with the residential nature of the properties in the neighborhood; and that a location for such a dumpster had previously been established in the loading dock area where it could be suitably screened. The location as proposed is not harmonious with the residences across the street. CT Page 4878
If the commission fails to state reasons for denial, the Court must search the entire record to find a basis for the commission's decision. Parks v. Planning and Zoning Commission,178 Conn. 657, 661-62 (1979). Where the Commission has given reasons, the issue is whether the assigned reasons are reasonably supported by the record and pertinent to considerations to be applied under applicable regulations. DeMaria v. Planning andZoning Commission, 159 Conn. 534, 541 (1970). In any event, the Court must review the record with respect to each denial appealed from.
A. The Third Flagpole
The Commission ostensibly denied the third flagpole containing the corporate logo on the ground it constituted a sign. Article I, Section 8 of the Regulations defines a "sign" in pertinent part as follows:
 Any . . . artificial structure, device . . . or object which shall use any . . . banner, flag, pennant, insignia, logo, device or attract attention to identify, advertise, announce or represent any object, product, place, activity, person, institution, organization, firm, group, commodity, profession, enterprise, business or industry and which is intended to be seen from a public street.
Regulations, Article I, Section 9.
The Commission's authority to regulate signs is derived from and limited by General Statutes § 8-2. That section authorizes a zoning commission to regulate "the height, size and location of advertising signs and billboards. The word "advertise," and thus what permissibly may be regulated as an "advertising sign," was defined in Schwartz v. Planning andZoning Commission, 208 Conn. 146, 155 (1988), as follows:
 [T]o announce publicly esp[ecially] by a printed notice or a broadcast; [and] to call public attention to esp[ecially] by emphasizing desirable qualities so as to arouse a desire to buy or patronize.
 Schwartz held that a thirty-two foot high cylindrical structure with wind activated moving parts made of brushed aluminum entitled "Landmark" proposed to be erected at the CT Page 4879 entrance of the Hamden Shopping Center was not an advertising sign. Although it would "no doubt attract attention to itself," it could "not attract attention to any use, product, service, or activity" at the shopping center. Id., 154. Accordingly, in denying the application the commission acted without valid reasons in that it exceeded the regulatory authority granted to it by § 8-2.
Such is the case here. Plaintiffs' building functions solely as a plant that manufactures plastics. Unlike the shopping center involved in Schwartz, supra, there is no retail or wholesale activity conducted at Plaintiffs' building. The presence of a flagpole and flag is insufficient to constitute an "advertising sign."
The location of the three flagpoles is shown on the 1991 survey comprising Exhibit 2, and in various of the photographs comprising Exhibit 7b. They are located in close proximity to each other behind a strand of taller trees shielding them from the street. Two of the flagpoles respectively fly the United States and State of Connecticut flags. Article IV, Section 7.C.1 of the Regulations provides the government flags are "types of signs" that are exempt from regulation as such.
There is no discernible difference in location, size or viewability among these three flags. There is nothing in the record to indicate that the subject corporation flag is anything but tasteful, or not in keeping with the character of the zone in which the property is located. The Commission's decision is unsupported by the record, and is arbitrary and an abuse of discretion. Plaintiffs' appeal is sustained on this issue.
B. Illumination of Flagpoles
Unlike the existence of the subject third flagpole, illumination of the flagpoles at night can impact on neighboring properties. The Commission's decision on this issue is sustained.
C. The Dumpster
The Plaintiffs sought approval of the location of a second dumpster. This second dumpster was required in order for Polymer to comply the environmental and recycling requirements. The location of this requested dumpster was not screened. CT Page 4880
Article VI, Section 12(B) of the Regulations sets forth the standards for granting a special permit. These include the following:
 1. That the existing and future character of the neighborhood in which the zone and/or use is located will be protected;
 2. That adequate safeguards have been taken to protect adjacent property and the neighborhood in general from detriment;
The minutes of its July 19, 1994 meeting indicate that the Commission denied this request on the ground that the proposed location was not suitably screened. Exhibit 12. That this decision was predicated on the lack of suitable screening is supported by the record, namely a review of the transcript of the July 13, 1994 public hearing. Exhibit 15. A decision on the ground of the lack of screening comports with the foregoing standards. The Court will not substitute its judgment for that of the Commission on this ground. Raybestos-Manhattan, Inc. v.Planning and Zoning Commission, supra.[2]
II. Polymer II
In response to the Commission's denial in Polymer I of the first unscreened location of the second required dumpster, the Plaintiffs applied for approval for a relocation of this dumpster to an adjacent bay, with provision for adequate screening. A Public hearing on this application was held on September 26, 1994. Exhibit 14, Transcript.
At its October 11, 1994 regular meeting, the Commission denied the application on the following ground:
 Members found that the applicant did not adequately demonstrate the necessity for an additional dumpster/compactor exterior of the building and its proposed location in front of an open door would result in additional unwanted noise in the neighborhood.
Exhibit 9. The Plaintiffs have appealed from this decision.
The Commission's decision neither comports with its Regulations nor is supported by the record. The dumpster is not a CT Page 4881 structure. It is an item of movable personal property. The Commission is not empowered to determine what is or is not necessary in a manufacturing operation. On the contrary, the record supports the needs. See, e.g., Exhibits 6-7,; Testimony of Mario Musilli, Exhibit 14, Transcript.
To the extent that the decision purports categorically to prohibit a location in front of the building, the decision conflicts with the Commission's previous action. The Commission previously approved a location in front of the building. The only significant difference appears to be the adequacy of the screening.
The allusion to noise reflects upon the litany of complaints from members of the public at the Polymer I public hearing. Those complaints, however, were in effect directed at the existence of the manufacturing facility itself. Whatever the basis for those complaints, the premises are zoned for, and a special permit has issued, for the manufacturing use to which the premises are being put. Moreover, as Commissioner Brenneman pointed out at the Polymer II public hearing, noise is going to be heard no matter where the dumpster is put, whether in front or in back of the building. Exhibit 14, Transcript, page 14.
The decision provides "no information to the plaintiff to enable it to know wherein the plan submitted failed to satisfy the requirements of the regulations". RK Development Corporationv. Norwalk, 156 Conn. 369, 377 (1968). The concern properly to be reviewed by the Commission is the adequacy of the screening. The Commission cannot merely and continually say "No".
The decision is arbitrary and an abuse of discretion. Plaintiffs' appeal is sustained. However, although the decision fails to consider either the adequacy of the proposed screening or what is reasonably adequate therefor, there is insufficient evidence before the Court on these issues. Therefore as authorized by General Statutes § 8-8(1), the matter is remanded to the Commission for further proceedings in connection with a proper determination of suitable screening at the proposed location.
III. Polymer III
In Polymer III, the Plaintiffs applied for site plan modification requesting "approval to modify, relocate and/or add CT Page 4882 emissions equipment on the roof of the facility located at 656 New Britain Avenue, Farmington, Connecticut." The requested modification was necessary in order to comply with requirements of the Department of Environmental Protection ("DEP").
A public hearing on the application was held on September 12, 1994. The Commission issued its decision at its regular meeting of October 11, 1994.[3] The decision, as set forth in the minutes of that meeting, Exhibit 15, was as follows:
 VOTED: To grant Polymer Resources, Ltd. approval for modification to site plan for 656 New Britain Avenue by addition of exhaust stacks according to drawings entitled "Permanent Total Enclosure Plan Modification" Nos. M-1 and M-1A subject to the following conditions:
 1. Details for the metal shuttered windows shall be submitted for review and approval by the Commission;
 2. No chemicals shall be used in the filters of the air handling unit beyond carbon without prior Commission approval;
 3. The applicant shall submit to the Commission for review and approval a monitoring plan to assure continuous control of emissions from the new stacks.
 The Commission found that these additional stacks were necessary as part of the design for a total permanent enclosure which has been required by the CT Department of Environmental Protection.
In approving the application, the Commission set the foregoing three conditions. Polymer has appealed the conditions numbered 2 and 3 above.
Contrary to the mandate of General Statutes § 8-3g(1), the Commission stated no reasons for its imposition of these two conditions. Accordingly, the Court must search the record to find a basis for the same. Parks v. Planning and Zoning Commission,supra. The Court can find none within the power, authority and jurisdiction of the Commission.
The record indicates that in compliance with the order of the CT Page 4883 Commissioner of Environmental Protection, the Plaintiffs permanently and totally enclosed the processing and manufacturing area of the facility. The DEP was acting under the authority vested in it by the Air Pollution Control provisions of General Statutes Chapter 446c, §§ 22a-170 to 22a-194g inclusive. The effect of the enclosure is to treat every molecule of air prior to discharge into the atmosphere. As a result of the enclosure, the Plaintiffs were required to install four vertical filtration vents or stacks on the roof of the building.
The Plaintiffs contend that the Commission lacks the power, authority and jurisdiction to impose the subject conditions, because Chapter 446c has preempted the field of regulation of air emissions to the Commissioner of Environmental Protection. The Court concurs.
The law of preemption is set forth in Shelton v.Commissioner, 193 Conn. 506 (1984) as follows:
 [A] local ordinance is preempted by a state statute whenever the legislature has demonstrated an intent to occupy the entire field of regulation on the matter . . . or . . . whenever the local ordinance irreconcilably conflicts with the statute . . . Whether an ordinance conflicts with a statute or statutes can only be determined by reviewing the policy and purposes behind the statute and measuring the degree to which the ordinance frustrates the achievement of the state's objectives . . .
(Citations omitted.) Id., 517.
Shelton confirmed the rule enunciated in Colchester v.Reduction Associates, Inc., 34 Conn. Sup. 177 (1977), "that the general zoning authority conferred by [General Statutes] §8-2 does not extend to the enactment of zoning regulations that conflict with a DEP permit." Id., 517. This rule was modified inBeacon Falls v. Posick, 212 Conn. 570 (1989), only to the extent that by virtue of then General Statutes § 22a-208(c), as amended by 1984 Public Acts 84-331, § 2, local zoning regulations dealing with waste disposal are preempted only when they conflict with a DEP permit granted to the Connecticut Resources Recovery Authority. Id., 580.
The powers granted to the Commissioner of Environmental CT Page 4884 Protection by Chapter 446c are fully comprehensive in scope. For example, § 22a-174(a) grants to the Commissioner the "power to formulate, adopt, amend and repeal regulations to control air pollution throughout the state." Section 22a-174(c) elaborates thereon by empowering the Commissioner to issue permits and set conditions and procedures therefor, to require periodic inspection, maintenance, and record keeping, and to set reporting requirements. Sections 22a-175 and 22a-180 provide penalties for violation including civil fines and criminal sanctions. All inclusive criteria for making regulations and issuing orders are set forth in § 22a-176, and enforcement and emergency action procedures are set forth in §§ 22a-177, 22a-178 and 22a-181. The entire field of regulation is occupied.
That the legislature intended that Chapter 446c preempt the field of air pollution to the Commissioner of Environmental Protection is confirmed by the express language of 22a-185, entitled "Municipal districts for control of air pollution." This section authorizes a municipality to "adopt ordinances or regulations for the control of air pollution within its territorial limits," and authorizes a municipal ordinance or regulation to impose "stricter controls" than the regulations promulgated by the Commissioner. However, in each case such municipal ordinances and regulations must first be approved by the Commissioner. The Defendant Commission does not claim that any such approved Town of Farmington ordinances or regulations exist.
The conditions appealed from are not within the power, authority and jurisdiction of the Commission to impose, and are therefore illegal and void. Beckish v. Planning and ZoningCommission, 162 Conn. 11, 18 (1971). The whole decision is not thereby rendered illegal and inefficacious, as there are sufficient grounds, uncontested by the parties, to support the remaining action of the Commission. Id. The record indicates, and the Commission specifically found, that "these additional stacks were necessary as part of the design for a permanent total enclosure which has been required by the Connecticut Department of Environmental Protection." Exhibit 15, Minutes. "Even if the matter was remanded for a new hearing, these conditions would have no place in a new hearing or a new decision." Id., 19.
The Plaintiffs' appeal is sustained. The decision of the Commission is modified by the deletion therefrom of the subject illegal conditions appealed from. CT Page 4885
IV. Summary
In Polymer I, the appeal is sustained as to Issue A (third flagpole/flag), and dismissed as to Issues B (illumination) and C (dumpster).
In Polymer II, the appeal is sustained as indicated, and the matter remanded to the Commission for proceedings consistent with this ruling.
In Polymer III, the appeal is sustained.
Judgment may enter in each of these three appeals, denoted as Polymer I, II and III, in accordance with the foregoing ruling of this Court in each such appeal.
FINEBERG, J.